JONATHAN CINER and DEBORAH CINER
106 MEADE AVE
PASSAIC, NEW JERSEY
(973) 617-7582
*PRO SE PLAINTIFFS*

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

JONATHAN CINER AND DEBORAH CINER,

*Plaintiffs*,

v.

THE PHILADELPHIA CONTRIBUTIONSHIP
and GERMANTOWN INSURANCE COMPANY

*Defendants.*

Index No.

**COMPLAINT**

Plaintiffs Jonathan Ciner and Deborah Ciner, hereby state and allege as follows:

**NATURE OF ACTION**

1. Plaintiffs Jonathan Ciner and Deborah Ciner (the "Ciners" or "Plaintiffs") are residents of Passaic, New Jersey. The Ciner's home was substantially damaged in a fire on August 21, 2017 (the "Fire").

2. Defendants The Philadelphia Contributionship and Germantown Insurance Company ("Philadelphia Contributionship" or "Defendants") issue homeowner's property insurance policies.

3. The Ciners purchased homeowner's insurance from Defendant Philadelphia Contributionship with a limit of liability of $735,000 for their dwelling and $367,500 for their contents.

4. The Homeowner's Policy indicated that Defendants guaranteed coverage for certain perils including the loss of contents.

5. On or about August 21, 2017, the Ciner's home was severely damaged in the Fire.

6. The Ciner's promptly filed a claim with Defendants for, among other things, property damage and damage to prescription medication, primarily growth hormones and other medications with a value in excess of $350,000 (the "Growth Hormones"). .

7. During the period between the Fire and now, the Ciners public adjuster was negotiating with the Defendants adjuster.

8. Over the last two years, the Ciner's public adjuster received numerous indications (as outlined in the Section entitled "FACTS COMMON TO ALL CLAIMS," below) that the Defendant will pay fully or offer a substantial compromise with respect to the Growth Hormones, as well as pay other sums claimed.

9. After receiving numerous indications (as outlined below) that the Defendants would substantially honor the Ciner's claims, on or about July 23, 2019, the Ciner's public adjuster was put into contact with a Mr William Hall ("Mr. Hall"), who identified himself as a new supervisor who was not yet familiar with the file.

10. On or about August 5, 2019, the Ciner's public adjuster received a letter, dated August 2, 2019, from Mr. Hall stating that the Defendant is denying the claim in its entirety without any explanation other than that the Ciners have recognized zero economic impact (the "Rejection Letter").

11. The Rejection Letter also stated that the Ciners would effectively have to file a suit by August 20, 2019 if they will want to challenge in court their decision. We note the Rejection Letter erroneously said the Fire took place on August 22, 2019 which would have allowed a suit until August 21, 2019.

12. The Rejection Letter was also mailed to the Ciners with a postmark of August 6th 2019 (15 days before the asserted statute of limitations) and was received by the Ciners on August

12th 2019 (9 days before the asserted statute of limitations.)

13. Noting the extremely short amount of time left to sue, the Ciners through their adjuster, twice requested a 90 day extension of the statute of limitation and Mr. Hall twice refused to extend the time period to sue.

14. Although the Defendants paid undisputed amount of damages on the dwelling and for certain contents (other than the Growth Hormones and contents in the "Laundry Room") Defendants have unreasonably and in bad faith denied entirely coverage with respect to the Growth Hormones, have still not paid for the contents in the Laundry Room and underpaid for the damage to the Ciner's home, despite clear attempts to have the Defendants pay such amounts.

15. By first sending the Rejection Letter to the Ciners, by mail, on August 6, 2019 and to the Ciners adjuster on August 2, 2019, effectively asserting that the statute of limitations runs on August 20, 2019, and rejecting repeated attempts to extend the Statute of Limitations, Defendants have not given the Ciners sufficient time to find effective legal counsel, thus forcing the Ciners to file this complaint *Pro-Se*.

## PARTIES

16. Plaintiffs Jonathan and Deborah Ciner are individuals and residents of 106 Meade Ave, Passaic, New Jersey, 07055.

17. Defendants The Philadelphia Contributionship and Germantown Insurance Company are corporations duly organized and existing under the laws of the State of Pennsylvania, with their principal place of business located at 212 South 4th Street, Philadelphia, PA 19106.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

19. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because there is

diversity of citizenship.

20. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 and because each of Plaintiff's claims arise in the District of New Jersey, the insured property is located in the District of New Jersey, and Defendants The Philadelphia Contributionship and Germantown Insurance Company are subject to personal jurisdiction in the District of New Jersey.

## FACTS COMMON TO ALL CLAIMS

21. The Philadelphia Contributionship and Germantown Insurance Company sold and issued Homeowner Policy Number 8G6808 to Mr. and Mrs. Ciner to cover losses to their dwelling and personal property caused by certain perils at their property (the "Homeowner's Policy").

22. Mr. and Mrs. Ciner paid all premiums when due.

23. The Policy was in full force and effect when the Fire occurred on August 21, 2017 and in its immediate aftermath.

24. On or about August 21, 2017, the Ciner's house was severely damaged in a fire (the "Fire").

25. Among the items lost in the fire was prescription medication, primarily growth hormones and other medications with a value in excess of $350,000 (the "Growth Hormones").

26. The Ciner's medical insurance policy explicitly excluded from coverage prescription medication lost or damaged in a fire and as such the Ciners' medical insurance provider did not replace the Growth Hormones.

27. The Ciner's promptly filed a claim with Defendants for, among other things, property damage and damage to contents including the Growth Hormones.

28. On or around October 18, 2017, the Ciners provided the Defendant with a detailed list outlining the Growth Hormone loss.

29. On or about November 15, 2017, the Defendants issued a "Sworn Statement of Proof of Loss" that valued the "Actual Cash Value" all content loss other than the contents in the laundry room (which was not yet released for entrance due to the fire) and the Growth Hormones.

30. On or around November 30, 2017, the Defendants adjuster told the Ciner's public adjuster that the Defendant assigned a special adjuster to review the Growth Hormone claim.

31. After numerous reminders by the Ciner's public adjuster to the Defendants adjuster, on or around July 23, 2018, the Ciner's public adjuster was informed by the Defendants adjuster that "insurance company assigned a contents specialist in order to get a better understanding of the hormones situation."

32. On August 21, 2018, the Ciners public adjuster sent, at Defendants request, information about the Growth Hormones pricing.

33. Sometime on or before September 5, 2018, the Defendants appointed an adjuster named "Reed" to deal specifically with the Growth Hormone claim.

34. On September 5, 2018, the Ciners public adjuster began negotiations with the new adjuster named "Reed"

35. On or around November 5, 2018, the Ciners public adjuster was offered $100,000 to close out the Hormone claim.

36. On November 6, 2018, the Ciners public adjuster told the Ciners that the Defendants said that they will pay more if they can inspect the hormones.

37. On November 26, 2018, a different adjuster (apparently working for Reed) from the Defendant met Mr. Ciner to inspect the hormones and told Mr. Ciner that he established the loss in its entirety and we should be paid fully.

38. Thereafter, the Ciner's public adjuster was told by the Defendants employee Reed (who was specially assigned to investigate the Growth Hormone claim) the he is recommending

that Ciners will be fully reimbursed for the Growth Hormones.

39. On or around February 22, 2019, the Ciner's public adjuster was told that the Defendant will settle the claim fully if the Ciners provide their Tax Returns.

40. On February 27, 2019, as requested by Defendant and in anticipation of a significant settlement, the Ciners sent Defendant his tax returns despite significant reservations of the loss of privacy.

41. On or about March 11, 2019, Defendant additionally requested Mr. Ciner's W-2 form. In anticipation of a significant settlement, the Plaintiffs sent Defendant such W-2 form despite significant reservations of the loss of privacy.

42. On or around March 26, 2019, the Ciner's public adjuster was told that that the Defendants adjuster "is waiting for a report from upper management on the hormones and from his builder on the Architect fees/extra money on the building."

43. Subsequently, the Ciner's public adjuster made numerous follow up calls to the Defendants.

44. On or about July 23, 2019, the Ciner's public adjuster was put into contact with a Mr William Hall ("Mr. Hall"), who identified himself as a new supervisor who was not yet familiar with the file.

45. On or about August 5, 2019, the Ciner's public adjuster received a letter, dated August 2, 2019, from Mr. Hall stating that the Defendant is denying the claim in its entirety without any explanation other than that the Ciners have recognized zero economic impact (the "Rejection Letter").

46. The Rejection Letter also stated that the Ciners would effectively have to file a suit by August 20, 2019 if they will want to challenge in court their decision. We note the Rejection Letter erroneously said the Fire took place on August 22, 2019 which would have allowed a suit until August 21, 2019.

47. Noting the extremely short amount of time left to sue, the Ciners through their adjuster twice requested a 90 day extension of the statute of limitation and Mr. Hall twice refused to extend the time period to sue.

48. In addition, the Defendants still owe $175,000 to the Ciners for unreimbursed losses with respect to the costs associated with rebuilding the damage incurred to their home from the fire and the unreimbursed contents of the Laundry Room.

49. In the almost two year period from the initial claim until the Rejection Letter, the Defendants received no material new information that supported the conclusion reached in the Rejection Letter. Yet, the Defendants did not provide any written explanation of why they are not settling the claim until 15 days before the expiration of the statute of limitation in violation of: (i) N.J.A.C. § 11:2-17.7(c)(1) which requires insurers to complete investigation of first-party claims and make payments within 30 calendar days from receipt of proof of loss, (ii) N.J.A.C. § 11:2-17 7(e) which requires that "If the insurer is unable to settle the claim …the insurer must send the claimant written notice [and a]n updated written notice setting forth the reasons additional time is needed shall be sent within 45 days after the initial notice and within every 45 days thereafter until all elements of the claim are either honored or rejected and (iii) N.J.A.C. § 11:2-17-8(e) which requires that "If a claimant is actively negotiating with an insurer for settlement of a claim… the insurer shall provide the claimant with written notice that the time limit may be expiring and may affect the claimant's rights. Such notice shall be given to claimants 60 calendar days before the date on which such time limit may expire."

50. Thus, despite clear language obligating it to pay at least $450,000 to the Ciners, Defendants have unreasonably and in bad faith fraudulently denied entirely coverage with respect to the Growth Hormones, have still not paid for the contents in the Laundry Room and underpaid for the damage to the Ciner's home, despite clear attempts to have the

Defendants pay such amounts.

51. By first sending the Rejection Letter by mail to the Ciners, on August 6, 2019 and to the Ciners adjuster on on August 2, 2019, effectively asserting that the statute of limitations runs on August 21, and rejecting repeated attempts to extend the Statute of Limitations, Defendants have not given the Ciners sufficient time to find effective legal counsel, thus forcing the Ciners to file this complaint pro-se.

### FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT

52. Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

53. The Homeowner's Policy, at all times relevant and material to the case, constituted a contract between Plaintiffs and Defendants.

54. Plaintiffs fully performed under the contract by paying all premiums when due and by cooperating with Defendants regarding the claims.

55. Plaintiffs timely complied with all conditions precedent to their recovery herein, including making an appropriate and adequate demand.

56. Plaintiffs complied with all additional requests made by Defendants based on the assurance that producing such documentation would result in a substantial offer of compromise including sending Defendants such personal information as tax returns and w-2 forms.

57. Plaintiffs even complied with Defendants request in the Rejection Letter to provide proof that the Ciners insurance policy does not cover the replacement of lost medications and all other requests.

58. Defendants failed to perform and materially breached the insurance contract when it wrongfully failed to pay and refused to reimburse Plaintiffs what they are owed for the Growth Hormones and damages to the dwelling and contents caused by the Fire to 106 Meade Ave.

59. By reason of Defendents' breach, including its failure to reimburse Plaintiffs for the covered losses, Defendants are liable to and owes Plaintiffs for the actual damages they suffered as a result of Defendants' breach, in an amount to be established at trial but no less than the combined Homeowner's Policy limits, together with interest and all other damages that Plaintiffs may prove as allowed by law.

## SECOND CLAIM FOR RELIEF
## BREACH OF GOOD FAITH AND FAIR DEALING

60. Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

61. Defendants has a duty to deal fairly and in good faith with Plaintiffs. There is an implied covenant of good faith and fair dealing in every insurance contract. This covenant obligates each party to the contract to refrain from taking any action or litigation position that would deprive the other of the benefits of the contract or cause undue hardship or harm to the other party. It also requires the insurer, *inter alia*, to investigate claims in good faith and to reasonably and promptly pay covered claims.

62. Plaintiffs timely complied with all conditions precedent to her recovery herein, including making an appropriate and adequate demand.

63. By wrongfully denying payments to Plaintiffs, Defendants breached the Homeowner's Policy, causing damage, including consequential damages.

64. Defendants breached their duty to deal fairly and in good faith by engaging in conduct calculated to further their own economic interests at the expense of Plaintiffs.

65. This conduct includes engaging deceptively with the Plaintiffs by refusing to offer a settlement with respect to the Growth Hormones, despite assigning different adjusters each of which indicated that the Defendants would pay significant sums, or in the case of Reed, the Defendant's employee specifically assigned to investigate the Growth Hormone claim told the Ciner's adjuster that he would recommend that Defendant should pay the entire

amount available under the policy, with respect to the Growth Hormones.

66. The breach of the duty to deal fairly and in good faith is further evidenced by having Plaintiffs, in reliance of verbal representations of a substantial settlement, submit to a Growth Hormones inspection in November of 2018, (in order to receive an amount greater than the verbal offer made to settle for $100,000 without even inspecting the Growth Hormones,); assuring the Plaintiffs that the Company would make a significant settlement offer if the Plaintiffs would provide their Tax Returns and after the Plaintiffs provided their tax returns, making such claim again that all they needed was Mr, Ciner's W-2, which Mr Ciner promptly provided; thereafter sending the claim to two other adjusters before rejecting the Growth Hormone claim by finding another supervisor that as late as July 23, 2019 admitted to Mr. Ciner's public adjuster that he was NOT familiar with the file. Such adjuster mailed the Rejection Letter the Ciners on August 6 only 15 days before the asserted Statute of Limitations would run and in bad faith rejected 2 request for a 90 day extension.

67. In addition, the Defendants bad faith is evidenced by the Defendants not providing any written explanation of why they are not settling the claim until 15 days before the expiration of the statute of limitation thus violating (i) N.J.A.C. § 11:2-17.7(c)(1) which requires insurers to complete investigation of first-party claims and make payments within 30 calendar days from receipt of proof of loss, (ii) N.J.A.C. § 11:2-17 7(e) which requires that "If the insurer is unable to settle the claim …the insurer must send the claimant written notice [and a]n updated written notice setting forth the reasons additional time is needed shall be sent within 45 days after the initial notice and within every 45 days thereafter until all elements of the claim are either honored or rejected and (iii) N.J.A.C. § 11:2-17-8(e) which requires that "If a claimant is actively negotiating with an insurer for settlement of a claim… the insurer shall provide the claimant with written notice that the time limit may be expiring and may affect the claimant's rights. Such notice shall be given to claimants 60

calendar days before the date on which such time limit may expire;" an unreasonable investigation of Plaintiffs' claims; investigating Plaintiffs' claims only to obtain facts supporting the claim denial that it had already decided to make; failing to meet its obligations pursuant to standard industry practices; and refusing to accept the facts and documentation supporting Plaintiffs' claims.

68. As a result of the foregoing, Defendants are liable to Plaintiffs for compensatory, consequential, and punitive damages in an amount Plaintiffs may prove at trial but no less than the Policy's limits, all costs associated with recovering, repairing, and replacing the damaged Property, attorneys' fees and expenses, together with all other damages Plaintiffs may prove as allowed by law.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT

69. Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

70. Defendants are persons within the meaning of the New Jersey Consumer Fraud Act.

71. Defendant sold the aforesaid insurance policy to the Plaintiffs and said action falls under the scope of the New Jersey Consumer Fraud Act.

72. All of Defendant's aforesaid actions and/or inactions in their performance under this insurance policy were in violation of the New Jersey Consumer Fraud Act.

73. Defendant was deceptive in the adjustment of this claim; in failing to pay the Growth Hormone claim despite assurances from numerous employees of the Defendants that such claims would either be paid in full or subject to a significant settlement; in scheming to defraud its policyholder by transferring the claim to different adjusters who after a careful review of the facts, each saw the merits to the Ciner's claims until they found a supervisor who 15 day prior to the asserted expiration of the statute of limitations issued a rejection of the claim; in acting malevolently and in reckless disregard for its obligations to give the

Plaintiffs the requisite amount of time needed to find counsel by sending the Rejection Letter so late and then refusing to extend the statute of limitations despite two requests thereby not giving the Plaintiffs the requisite time to find counsel and; in fraudulently telling its policyholder that the losses were not covered despite the fact multiple employees of the Defendant appeared to think otherwise and despite the fact that a clear reading of the relevant statutes and the Homeowner's Policy clearly state otherwise.

74. The above action on part of the Defendant was part of an ongoing, widespread and continuous scheme to defraud its insureds in the payment of benefits under their policies of insurance.

75. Plaintiffs' experience is not an isolated case. The frequency and fraud evidenced by the acts and omission of the Defendant committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant with regard to handling these types of claims. Defendant's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholder. Specifically, Defendant received a benefit when it refused to pay Plaintiffs' entire claim for the Growth Hormones because it retained thousands of dollars that should rightfully have been paid to Plaintiffs under the Homeowner's Policy.

76. As a result of all of the above Defendants are in violation of the New Jersey Consumer Fraud Act and Plaintiffs seek damages under said Act.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request a judgment against Defendant for:

  A. Damages in the amount of at least $450,000 under the First Claim for Relief; and

  B. Damages in the amount of at least $450,000 under the Second Claim for Relief; and

  C. Treble Damages in the amount of at least $1,350,000 under the Third Claim for Relief; and

    D.    For trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure; and

    E.    Attorney's fees and expenses; and

    F.    Such additional relief as the Court may deem just and proper.

Dated: August 16, 2019
       Passaic, New Jersey

:    Jonathan Ciner and Deborah Ciner

106 Meade Ave
Passaic, NJ 07055
Tel: (973) 617-7582
Email: jonathan.ciner@gmail.com
*Pro-Se Plaintiffs*